# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,                     Criminal No. 07-99 (JRT/SRN)

                              Plaintiff,

v.

**ORDER ADOPTING REPORT AND**
**RECOMMENDATION**

(1) JHONNATHAN DELEON-BAYARDO,
(2) MANUEL INDA-GALAVIZ,
(3) RAMON AGUILAR-LIZAMA, and
(4) HECTOR MARTINEZ-BUENO,

                      Defendants.

---

Andrew S. Dunne, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Nancy R Vanderheider, **VANDERHEIDER LAW OFFICE**, P. O. Box 600066, St. Paul, MN 55106, for defendant Deleon-Bayardo.

Robert M. Paule**, ROBERT M PAULE, P.A.**, 3001 Hennepin Avenue South, Suite 309B, Minneapolis, MN 55408, for defendant Inda-Galaviz.

Timothy R Anderson**, LAW OFFICES OF TIMOTHY R ANDERSON**, 310 4th Avenue South, Suite 1050, Minneapolis, MN 55415, for defendant Aguilar-Lizama.

Caroline Durham, Assistant Federal Public Defender, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Street, Suite 107, Minneapolis, MN 55415, for defendant Martinez-Bueno.

This matter is before the Court on the objections of defendants Jhonnathan Deleon-Bayardo, Manuel Inda-Galaviz, and Hector Martinez-Bueno to the Report and Recommendation of United States Magistrate Judge Susan R. Nelson, dated June 18,

2007.   After considering eleven suppression motions concerning searches of the defendants' persons, a vehicle, and an apartment, the Magistrate Judge recommended denying defendant Deleon-Bayardo's Motion to Suppress Physical Evidence Obtained as a Result of Searches, Seizures, or Identification Procedures; defendant Inda-Galaviz's Motions to Suppress Physical Evidence and to Suppress Statement, Admissions, and Answers; and defendant Martinez-Bueno's Motions to Suppress Evidence; to Suppress Evidence Obtained as a Result of Search and Seizure; to Suppress Statements, Admissions, and Answers; and to Suppress Eyewitness Identifications.[1]   The Court has conducted a *de novo* review of objections filed by defendants Deleon-Bayardo, Inda-Galaviz, and Martinez-Bueno to the Magistrate Judge's recommendations, pursuant to 28 U.S.C. § 636 (b)(1)(C) and Local Rule 72.2(b).   For the reasons explained below, the Court overrules defendants' objections, and adopts the Magistrate Judge's Report and Recommendation.

---

[1] The United States does not object to the Magistrate Judge's recommendation to grant defendant Ramon Aguilar-Lizama's Motions to Suppress Any Evidence Found Incident to Unlawful Arrest, and to Suppress Statements, Admissions, and Answers, or to the Magistrate Judge's recommendation to partially grant defendant Aguilar-Lizama's Motion to Suppress Any Evidence Obtained as a Result of Search and Seizure as that motion pertained to evidence recovered from or near Aguilar-Lizama's person at the Richfield Police Department ("RPD").   In addition, defendant Aguilar-Lizama has not objected to the Magistrate Judge's recommendation that the Court deny his Motion to Dismiss Counts 1 and 2 of the indictment, and to deny in part his Motion to Suppress Any Evidence Obtained as a Result of Search and Seizure as to all evidence other than that recovered from or near his person at the RPD.   Accordingly, the Court adopts the Magistrate Judge's recommendation on those motions.   Factual background relevant only to the motions brought by defendant Aguilar-Lizama has been omitted.

## BACKGROUND[2]

Following a tip from a confidential informant ("CI"), the Richfield Police Department ("RPD") began investigating possible heroin and cocaine trafficking from a Richfield apartment in January 2007. The CI gave a description of the apartment's appearance and location in the apartment complex, and specifically identified it as unit 202. The CI also indicated that the apartment's occupants were Hispanic males, and that they used a vehicle to distribute the drugs.

The owners of the apartment complex, as well as the owners of a second, nearby complex, gave the RPD permission to conduct dog sniffs in their buildings' hallways. On February 28, 2007, Officer Gregory Peterson of the RPD, Officer Mark Meyer of the Metropolitan Airport Police, and Officer Meyer's drug dog, Brio, arrived to carry out these sniffs, and started with the second building. This building was a short distance from the building containing unit 202, and as the officers proceeded they noticed two Hispanic males watching them from the building containing that unit. These two observers were later identified as defendants Deleon-Bayardo and Inda-Galaviz.

A short time later, Officer Peterson walked alone to the building containing unit 202, and encountered defendant Deleon-Bayardo outside the locked front entrance. Officer Peterson motioned for defendant Deleon-Bayardo to open the door, but he indicated that he could not. Defendant Deleon-Bayardo then made a call with his cellular phone, and a short time later defendant Inda-Galaviz appeared and opened the door.

---

[2] The background included below is based primarily on the facts supplied by the Magistrate Judge.

Defendant Inda-Galaviz continued to the parking lot, and both defendant Deleon-Bayardo and Officer Peterson entered the building.   After observing defendant Deleon-Bayardo walk to the second floor, which contained unit 202, Officer Peterson opened the front entrance for Officer Meyer and Brio.

The officers then proceeded to the second floor to conduct a dog sniff, and Brio sniffed and then sat in front of unit 202, her trained indication that there were controlled substances in the apartment.   Moments later, defendant Deleon-Bayardo unexpectedly opened the apartment door.   After a brief exchange in which defendant Deleon-Bayardo told the officers that he did not live at the apartment and was alone, defendant Deleon-Bayardo withdrew into the apartment and the door began to close.   Officer Peterson decided to secure the apartment and seek a search warrant, and stepped into the doorway to prevent the door from closing.   He sent Officer Meyer and Brio to find defendant Inda-Galaviz and noticed – from the threshold of the apartment – a baggie at defendant Deleon-Bayardo's feet and a marijuana pipe in the apartment kitchen.   Officer Peterson also noticed defendant Deleon-Bayardo attempting to make a phone call, and approached him to intervene.

Officer Peterson confiscated defendant Deleon-Bayardo's cell phone and performed a pat search, and then directed defendant Deleon-Bayardo to sit in an apartment hallway.   He contacted RPD to request backup, and RPD Officer Blair arrived soon after to take over control of defendant Deleon-Bayardo.   Officer Peterson proceeded to conduct a brief protective sweep of the apartment.   Soon after, Officer Peterson received a call from RPD Officer Seeve, reporting that RPD had located a man matching

Officer Peterson's description of defendant Inda-Galaviz.  The man was sitting in a Ford Explorer that Officer Peterson could see from the apartment window.  Officer Peterson recognized the man as defendant Inda-Galaviz once the officers removed him from the vehicle, and officers brought defendant Inda-Galaviz and a vehicle passenger to the apartment.  Throughout this time, Officer Peterson was in contact with RPD Officer Majewski in an effort to obtain a search warrant.

After attempting to communicate with the defendants, Officer Peterson concluded that a translator would be necessary for effective questioning, and decided to have them transported to the RPD.  Officers then handcuffed the defendants, and Officer Seeve discovered keys to the apartment and two small balloons of what appeared to be heroin in defendant Deleon-Bayardo's pocket.  The officers removed the defendants, and Officer Peterson waited inside the apartment for word about the search warrant.

While he waited, Officer Peterson heard something thrown at an apartment window, and looked out and saw defendant Martinez-Bueno throwing a snowball in the direction of the apartment.  Officer Peterson then observed Martinez-Bueno enter a vehicle parked next to the Ford Explorer driven by defendant Inda-Galaviz, and called the RPD to report the vehicle's license plate number.  Officer Peterson also noted his interest in speaking with defendant Martinez-Bueno about drug trafficking in unit 202.

Shortly thereafter, RPD Sergeant Shawn Flaherty stopped the vehicle that defendant Martinez-Bueno had entered, and questioned the defendant and the driver.  The driver indicated that there was drug paraphernalia in the vehicle, a citable offense, and Sergeant Flaherty asked defendant Martinez-Bueno to step out of the vehicle.  Sergeant

Flaherty noticed a strong odor of marijuana coming from the defendant, and pat searched him.   After discovering 13.4 grams of marijuana and $745 on defendant Martinez-Bueno's person, Sergeant Flaherty placed him in his squad car.

In the meantime, defendants Deleon-Bayardo and Inda-Galaviz arrived at the RPD and were searched, advised of their *Miranda* rights, photographed, booked, and interviewed.  The search of defendant Inda-Galaviz uncovered a large quantity of heroin, and during an interview aided by an interpreter defendant Inda-Galaviz admitted having stayed in unit 202 for the last three days.  RPD Officer Drayna compiled a photograph composite of the booking photos of defendants Deleon-Bayardo, Inda-Galaviz, Martinez-Bueno, and Aguilar-Lizama, and delivered it to unit 202.  Meanwhile, Officer Peterson, still at unit 202 waiting for a warrant, saw a car parked next to the Ford Explorer in the building parking lot.  Officer Peterson and another officer questioned the car's occupants, and one of them admitted coming to apartment complex to buy heroin.

The search warrant arrived a short time later, and a search of unit 202 uncovered a large quantity of heroin, cocaine, digital scales often used in drug trafficking, $17,000 to $27,000 in cash, and paperwork including defendant Inda-Galaviz's name.  A search of the Ford Explorer turned up paperwork for a storage locker in Minneapolis, and a warrant executed at the locker two days later uncovered large amounts of cash.

During the search of unit 202, a visitor arrived and indicated that he was there to buy heroin.  The officers showed the visitor the booking-photo composite produced by Officer Drayna, which included defendants' names, birth dates, and whether each had

invoked his *Miranda* rights.  The visitor indicated that he recognized defendants Deleon-Bayardo and Martinez-Bueno and that they were associated with unit 202.

Following the day of the arrests, Officer Peterson interviewed this visitor again, along with a passenger in the car that had pulled up next to the Ford Explorer, and the owner of the Ford Explorer.  They were all shown four photograph lineups, each of which contained a photo of one of the defendants and five photographs of similar-appearing individuals randomly selected by a computer.  The Ford Explorer owner identified defendant Deleon-Bayardo as a resident of unit 202, the car passenger identified defendants Deleon-Bayardo, Inda-Galaviz, and Martinez-Bueno as connected with unit 202, and the visitor again identified defendants Deleon-Bayardo and Martinez-Bueno in connection with unit 202.

An Indictment was filed on March 27, 2007, charging each of the four defendants with conspiracy to possess and distribute heroin, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846, and possession of heroin with intent to distribute, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).  The motions at issue here followed.  The Magistrate Judge's assessment of those motions is set out below to the extent necessary to address defendants' objections.

## ANALYSIS

## I.    ENTRY INTO THE APARTMENT COMPLEX

Defendant Inda-Galaviz contends – for the first time – that the officers violated his Fourth Amendment rights by entering the main, locked doors of the apartment complex

containing unit 202.  By entering these doors, the officers gained access to the building's hallways.  The Eight Circuit, however, has "repeatedly held that tenants of multifamily dwellings have no legitimate expectation of privacy in common or shared areas." *United States v. Mendoza*, 281 F.3d 712, 715 (8th Cir. 2002); *see United States v. Luschen*, 614 F.2d 1164, 1173 (8th Cir. 1980) (specifically noting "there is no reasonable expectation of privacy in halls and common areas of apartment buildings").  Moreover, Officer Peterson – whom the Magistrate Judge found to be a credible witness – testified that he had consent from building management to enter the building with a canine unit at any time. *See United States v. Kelly*, 551 F.2d 760, 764 (8th Cir. 1977).  Accordingly, the Court rejects the argument that the officers' entry into the apartment complex requires the suppression of any evidence.

## II.    ENTRY INTO APARTMENT 202

Defendants Deleon-Bayardo, Inda-Galaviz, and Martinez-Bueno contend that the RPD violated their Fourth Amendment rights when Officer Peterson entered unit 202 before obtaining a warrant.  The government responds that exigent circumstances justified a warrantless protective sweep of the apartment.  "The exigent circumstances exception justifies immediate police action without obtaining a warrant if . . . evidence is about to be destroyed."  *United States v. Amburn*, 412 F.3d 909, 915 (8th Cir. 2005) (quotation omitted).  "The analysis of whether this exception to the warrant requirement has been made out is an objective one focusing on what a reasonable, experienced police

officer would believe." *Id.*   The scope of police action permitted under this exception

may include a warrantless entry into a suspect's home.  *See id.* at 915-16.

Here, the officers had received information from a CI indicating that Hispanic

males were engaged in drug trafficking out of unit 202.   After arriving in the vicinity of

unit 202 with a drug dog, the officers noticed two Hispanic males watching them.   The

officers brought the drug dog[3] to the apartment, and the dog gave its designated

indication that the apartment contained narcotics, providing probable cause for a search.

*See United States v. Sundby*, 186 F.3d 873, 876 (8th Cir. 1999).[4]   Shortly after Brio's

indication, the apartment door opened unexpectedly, and Officer Peterson (with Brio at

---

[3] Defendant Deleon-Bayardo raises a challenge to Brio's reliability, noting that no evidence was presented concerning her performance record or the specific details of her signaling methods.  However, the Eight Circuit has indicated that to establish the reliability of a drug dog, the supporting affidavit submitted by the prosecution "need only state the dog has been trained and certified to detect drugs." *Sundby*, 186 F.3d at 876.  "An affidavit need not give a detailed account of the dog's track record or education." *Id.*  As the Magistrate Judge indicated, the affidavit submitted in this case – indicating that Brio was a drug dog certified by the United States Police Canine Association and describing her trained method for alerting – was sufficient under those standards.

[4] Defendants do not contend that the warrantless dog sniff constituted a search for Fourth Amendment purposes, a question that has split the circuits.  *Compare United States v. Brock*, 417 F.3d 692, 694-97 (7th Cir. 2005) (noting that permitting a warrantless dog sniff outside of a locked bedroom was consistent with the law expressed in the majority of circuits), *with United States v. Thomas*, 757 F.2d 1359, 1367 (2d Cir. 1985) ("Because of defendant Wheelings' heightened expectation of privacy inside his dwelling, the canine sniff at his door constituted a search.").  Though the Eighth Circuit does not appear to have specifically addressed the use of warrantless canine sniffs in apartment hallways, it has approved similar searches in the hallways of hotels.  *See United States v. Roby*, 122 F.3d 1120, 124-25 (8th Cir. 1997) (ruling that a dog sniff of the outside of hotel rooms was not a "search"); *Brock*, 417 F.3d at 696 (citing *Roby* in support of its holding).  The Court also notes that, contrary to argument by the defendants, nothing in the record supports the contention that the exigency that occurred here was "manufactured" by the officers.  *Cf. United States v. Johnson*, 12 F.3d 760, 764-65 (8th Cir. 1993).  After observing testimony, the Magistrate Judge indicated "Officer Peterson's plan was to conduct the canine sniff, exit the building unnoticed, and procure a search warrant."  Report and Recommendation, at *5.

his side) stood face-to-face with one of the two Hispanic males who had watched the officers carry out dog sniffs in a nearby building.  The closing of the door threatened to leave defendant Deleon-Bayardo in the apartment with the drugs detected by Brio, aware that the police had a drug-sniffing dog at his doorstep.  In those circumstances, Officer Peterson had sufficient reason to believe that the drugs detected by Brio were at risk of being destroyed.  *Cf. Richards v. Wisconsin*, 520 U.S. 385, 395-96 (1997) (permitting a no-knock entry after drug trafficking suspect slammed door upon recognizing officers).  This reasonable belief justified the entry that followed.[5]  The Court thus adopts the Magistrate Judge's recommendation to reject defendants' challenges to Officer Peterson's entry into the apartment.

## III.  ARREST OF DEFENDANT DELEON-BAYARDO

Defendant Deleon-Bayardo argues that the officers lacked a sufficient basis to arrest him without a warrant.  "Probable cause to conduct a warrantless arrest exists when at the moment of arrest police have knowledge of facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested."  *United States v. Zavala*, 427 F.3d 562, 565 (8th Cir. 2005) (quotation omitted).  Here, following the CI's

---

[5] The Court adds that Officer Peterson's presence in the apartment before the warrant arrived did not continue beyond what was reasonably necessary to prevent the destruction of evidence.  *See United States v. Pierson*, 219 F.3d 803, 806 (8th Cir. 2000) (noting that a warrantless entry based on exigent circumstances "must be limited in scope to the minimum intrusion necessary to prevent the destruction of evidence").  Other officers were in the process of obtaining a warrant (which was obtained later that night), Officer Peterson did not conduct a search before the warrant arrived, and the officers were unaware of the number of conspirators who may have access to the apartment in the meantime.

tip and the dog sniff, Officer Peterson observed a baggie and a marijuana pipe in unit 202. The Court agrees with the Magistrate Judge that from that point forward the officers had probable cause to arrest defendant Deleon-Bayardo on suspicion of narcotics trafficking.[6]

## IV.    SEARCH WARRANT FOR UNIT 202

Defendants Deleon-Bayardo and Inda-Galaviz argue that the warrant to search unit 202 was not supported by probable cause. A search warrant requires a showing that there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Defendants argue that the affidavit purporting to contain probable cause was inadequate, because the CI's contributions were stale, Brio's qualifications were not sufficiently presented, and no other evidence compensated for those shortcomings. After a careful review of defendant's contentions and the record, however, the Court agrees with the Magistrate Judge that the officers presented an adequate basis for a warrant. The CI had initially approached the RPD with information on January 26, 2007, identified the precise location of unit 202 on February 22, and the search was executed on February 28. Information provided by the CI that near to the search was not stale. In addition, as noted above, the description of Brio's qualifications was adequate under Eighth Circuit law. *See Sundby*, 186 F.3d at 876. Moreover, the affidavit noted Officer Peterson's identification of drug paraphernalia in

---

[6] Defendant Deleon-Bayardo disputes Officer Peterson's testimony about what he saw inside the apartment. However, the Magistrate Judge specifically found Officer Peterson credible on this point after having observed him testify, and the Court finds no basis in the record for disturbing this finding.

the apartment.   The Court adopts the Magistrate Judge's recommendation to reject defendants' challenges to the search warrant.

## V.  *FRANKS* HEARING

Defendant Deleon-Bayardo argues that he is entitled to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), because the affidavit submitted in support of the search warrant included misleading statements.   *Franks* entitles a defendant to an evidentiary hearing if he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Id*. at 155-56.   Defendant Deleon-Bayardo challenges the portion of the affidavit describing Officer Peterson's identification of drug paraphernalia in unit 202. Defendant Deleon-Bayardo contends that Officer Peterson could not have seen the paraphernalia from where he was standing in the apartment doorway.   As indicated above, however, the Magistrate Judge found Officer Peterson credible on this point after observing him testify, and the Court finds no basis in the record for rejecting that finding. Accordingly,  the  Court  adopts  the  Magistrate  Judge's  recommendation  to  reject defendant Deleon-Bayardo's request for a *Franks* hearing.

**VI.      ARREST OF DEFENDANT INDA-GALAVIZ**

Defendant Inda-Galaviz contends that the officers lacked a sufficient basis to seize him, and later arrest him.[7]   The Magistrate Judge recommended otherwise, suggesting that the multiple observations linking defendant Inda-Galaviz to the drug operations based in unit 202 provided probable cause for his arrest.   The Court agrees with the Magistrate Judge.

Shortly after arriving at the apartment building, the officers noticed defendants Inda-Galaviz and Deleon-Bayardo together watching them, as the officers conducted dog sniffs in a nearby building.  Later, defendant Inda-Galaviz opened the door for defendant Deleon-Bayardo after the latter could not get into the apartment building and made a cell phone call.  These observations strongly suggested a link between these two defendants, which was worth noting in light of the CI's suggestion that unit 202's drug trafficking involved multiple Hispanic males.  Then, a trained drug dog indicated the presence of narcotics in unit 202 and the officers discovered defendant Deleon-Bayardo and drug paraphernalia in the apartment, substantially corroborating the CI's information about drug activity.  In the moments after this encounter, Officer Peterson had to intervene to prevent defendant Deleon-Bayardo from making a phone call, at least marginally corroborating the CI's tip that the trafficking involved multiple participants, and suggesting that someone needed to be warned.  Finally, a short time later, an officer observed an individual matching the description of defendant Inda-Galaviz sitting in a

---

[7] Because the Court finds that there was probable cause to arrest defendant Inda-Galaviz when he was first seized, the precise point when his seizure became an arrest is not relevant.

parked car within view of the apartment, which was consistent with the CI's description of the operation's *modus operandi*.   Officer Peterson then positively identified the suspect as the person he had encountered earlier in the evening.   At that point the information available to the officers, along with the reasonable inferences suggested by that information, provided the officers with sufficient grounds to conclude that defendant Inda-Galaviz was engaged in drug trafficking.   The Court will therefore adopt the Magistrate Judge's recommendation to reject defendant Inda-Galaviz's challenge to the evidence derived from his arrest.

## VII.   *TERRY* STOP OF DEFENDANT MARTINEZ-BUENO

Defendant Martinez-Bueno argues that the RPD lacked a sufficient basis for stopping his vehicle.   Under *Terry v. Ohio*, 392 U.S. 1 (1968), "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow,* 490 U.S. 1, 7 (1989).   By the time defendant Martinez-Bueno was stopped, the police had developed considerable evidence linking unit 202 with drug crimes, as described above.   The only question is whether defendant Martinez-Bueno was sufficiently linked to the apartment to provide reasonable suspicion for a *Terry* stop.   The Magistrate Judge determined that a sufficient link was established when Officer Peterson observed defendant Martinez-Bueno throwing snowballs at the apartment window, in an apparent attempt to contact the people inside. In light of what had transpired earlier in the evening – including the substantial

corroboration of a CI tip suggesting that Hispanic males were running a drug operation out of unit 202 – the Court agrees that this suspicious activity provided a sufficient grounds for an investigative stop.   The Court adopts the Magistrate Judge's recommendation to reject defendant Martinez-Bueno's challenge to the *Terry* stop.

## VIII.   PHOTOGRAPH LINEUPS

Finally, defendant Martinez-Bueno argues that the photograph lineup in which he was identified was tainted.  "The test for determining whether identification procedures are unduly suggestive is a two-step inquiry. The first question is whether the procedures were suggestive while the second inquiry is whether, considering the totality of the circumstances, the suggestive procedures gave rise to a substantial likelihood of irreparable misidentification."   *United States v. Briley*, 726 F.2d 1301, 1306 (8th Cir. 1984).   Here, the potentially suggestive elements in the booking-photo composite included notations suggestive of criminal activity, and a jail cell backdrop.   While the Court agrees with the Magistrate Judge that the inclusion of these features in each of the photographs eliminated the possibility that any *one* photo was more suggestive than the others, it seems likely that it was suggestive as to whether *any* of the individuals were connected with criminal activity.   Regardless, the Court agrees that the photo composite did not create a "substantial likelihood of irreparable misidentification."   *Briley*, 726 F.2d at 1306.   The witness indicated that he had been purchasing heroin from unit 202 for about a year, giving him ample opportunity to become familiar with the individuals

involved.   Accordingly, the Court adopts the Magistrate Judge's recommendation to reject defendant Martinez-Bueno's challenge to the photo identification.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, the Court **OVERRULES** defendant Aguilar-Lizama, Inda-Galaviz, and Deleon-Bayardo's objections [Docket Nos. 124, 123, and 127] and **ADOPTS** the Report and Recommendation dated June 18, 2007 [Docket Nos. 106, 107, and 109].   **IT IS HEREBY ORDERED** that:

1.      Defendant Jhonnathan Deleon-Bayardo's Motion to Suppress Physical Evidence Obtained as a Result of Searches, Seizures, or Identification Procedures [Docket No. 59] is **DENIED**.

2.      Defendant Manuel Inda-Galaviz's Motion to Suppress Physical Evidence [Docket No.43] is **DENIED**.

3.      Defendant Manuel Inda-Galaviz's Motion to Suppress Statement, Admissions and Answers [Docket No. 47] is **DENIED**.

4.      Defendant Hector Martinez-Bueno's Pretrial Motion to Suppress Evidence [Docket No.73] is **DENIED**.

5.      Defendant Hector Martinez-Bueno's Pretrial Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 74] is **DENIED**.

6.      Defendant Hector Martinez-Bueno's Pretrial Motion to Suppress Statements, Admissions, and Answers [Docket No. 75] is **DENIED**.

7.      Defendant Hector Martinez-Bueno's Motion to Suppress Eyewitness Identifications [Docket No. 79] is **DENIED**.

**IT IS FURTHER ORDERED** based upon the Findings of Fact, Conclusions of Law, and Recommendation by the Magistrate Judge dated June 18, 2007, and no objections having been filed by defendant Ramon Aguilar-Lizama to said Report and Recommendation [Docket Nos. 108], that:

8.      Defendant Ramon Aguilar-Lizama's Motion to Suppress Any Evidence Found Incident to Unlawful Arrest [Docket No. 36] is **GRANTED**.

9.      Defendant Ramon Aguilar-Lizama's Motion to Dismiss Counts 1 and 2 of the Indictment [Docket No. 37] is **DENIED**.

10.      Defendant Ramon Aguilar-Lizama's Motion to Suppress Any Evidence Obtained as a Result of Search and Seizure [Docket No. 38] is **GRANTED** as to the evidence recovered from or near his person at the RPD, but **DENIED** in all other respects.

11.      Defendant Ramon Aguilar-Lizama's Motion to Suppress Statements, Admissions, and Answers [Docket No. 39] is **GRANTED**.


DATED:  January 14, 2008                    _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                              United States District Judge